# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT JOHNSON,<br><br>Plaintiffs<br><br>v.<br><br>MORNING STAR MERCED, LLC, a California Limited Liability Company, and DOES 1-10,<br><br>Defendant | CASE NO. 1:18-CV-0558 AWI EPG<br><br>ORDER ON DEFENDANT'S MOTION TO DISMIS<br><br>(Doc. No. 9) |

This is a disability access related case brought by Plaintiff Scott Johnson ("Johnson") against Defendant Morning Star Merced, LLC ("MSM"). Johnson alleges claims under the Americans with Disabilities Act (42 U.S.C. § 12101 et seq. ("ADA")) and the California Unruh Civil Rights Act (Cal. Civ. Code §§ 51-53 ("Unruh Act" or "Unruh")). MSM moves the Court to decline to exercise supplemental jurisdiction over Johnson's Unruh Act claim. For the reasons that follow, MSM's motion will be denied.

## GENERAL BACKGROUND

From the Complaint, MSM owns a hotel in Santa Nella, California. Once in July 2016, once in October 2017, and twice in March 2018, Johnson stayed overnight at MSM's hotel. Johnson alleges that he experienced barriers/conditions that violated the Americans with Disability Act Accessibility Guidelines, including: (1) no compliant access aisles that accompany reserved

parking spaces; (2) the absence of a ramp to bypass steps between the parking lot and the main entrance, and no signage directing patrons to an accessible route/entrance; (3) the second floor entrance door hardware has a pull style handle that requires tight grasping to operate; (4) Room 104's ramp did not have a landing and had 9% slope; (5) Room 104's restroom sink did not have proper knee clearance for wheelchair users; and (6) elevator buttons are more than 54 inches above the ground.  Johnson alleges that the failure to remove these barriers is intentional.  Johnson seeks injunctive relief under the ADA and the Unruh Act for MSM to comply with the ADA and the Unruh Act, statutory damages (and not actual damages) of at least $4,000 under the Unruh Act, and reasonable attorney's fees under the ADA and the Unruh Act.

## **DEFENDANT'S MOTION**

*Defendant's Argument*

MSM argues that the Court should decline to exercise supplemental jurisdiction over Johnson's Unruh claims.  First, the Unruh claims substantially predominates over the ADA claims.  Johnson is seeking identical injunctive relief under the ADA and the Unruh Act, but he is also seeking to recover monetary damages and mandatory attorney's fees through the Unruh Act.  Under the ADA, monetary damages are not available and attorney's fees are discretionary.  Because Johnson has filed numerous disability related Unruh cases in the past twelve months, he is clearly motivated by the monetary damages.  Further, Johnson is arguing that MSM acted intentionally, which is only relevant for the Unruh claims.  Second, Johnson is engaging in forum shopping.  California has established heightened pleading standards and an additional filing fee for "high frequency litigators" of Unruh disability access claims.  In the past twelve months, Johnson has filed 363 disability access cases.  However, by filing 355 of those cases in federal court, Johnson is engaging in forum shopping by bypassing state law requirements.  Therefore, considerations of comity strongly support declining supplemental jurisdiction.

*Plaintiff's Opposition*

Johnson argues that there is no basis for the Court to decline to exercise supplemental jurisdiction.  The Unruh claim is "entirely predicated on a finding that the ADA has been

2

violated," which means that almost identical cases would be pursued separately and simultaneously in state and federal court.  This is neither economical nor fair, and, considering that the same injunctive relief is being sought for both claims, it is possible to have conflicting remedies or duplicative orders.   Also, Johnson argues that he has chosen a federal forum because of the quality of judges and legal rulings, the ease of the electric filing system, the vast majority of published authorities arise in federal court, and the substantive law in this case is entirely federal law.  Even if the sole reason to litigate in this forum was to avoid cumbersome state rules, that is not an improper purpose.  Finally, identifying the number of cases filed is simply an attempt to prejudice the Court.  It is well recognized that serial litigation a legitimate method of enforcement of civil rights laws.

   *Legal Standard*

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a); Bahrampour v. Lampert, 356 F.3d 969, 978 (9th Cir. 2004).  "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." Bahrampour, 356 F.3d at 978.  Section 1367(a) requires courts to exercise supplemental jurisdiction, while § 1367(c) provides "the exclusive means by which supplemental jurisdiction can be declined by a court."  Executive Software N. Am., Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal., 24 F.3d 1545, 1556 (9th Cir. 1994).[1]  Under § 1367(c), courts may decline to exercise supplemental jurisdiction if:  "(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1)-(4); City of Chicago v. International Coll. of Surgeons, 522 U.S. 156, 173 (1997); Bahrampour, 356 F.3d at 978.  Courts have "discretion to keep, or decline

---
[1] Overruled on other grounds, California Dept. of Water Res. V. Powerex Corp., 533 F.3d 1087 (9th Cir. 2008).

3

to keep, [supplemental state law claims] under the conditions set out in § 1367(c)." <u>Acri v. Varian Assocs.</u>, 114 F.3d 999, 1000 (9th Cir. 1997) (en banc); <u>see also</u> <u>Executive Software</u>, 24 F.3d at 1557. "When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." <u>City of Chicago</u>, 522 U.S. at 174; <u>see</u> <u>Executive Software</u>, 24 F.3d at 1557.

*Discussion*

Initially, the Court emphasizes that it has federal question jurisdiction over the ADA claim. There is no basis for the Court dismiss Johnson's ADA claim, and that claim will remain irrespective of this motion. The only issue is whether the Court should continue to exercise supplemental jurisdiction over the Unruh claim. MSM is essentially basing its request on the provisions of § 1367(c)(2) and § 1367(c)(4). The Court will examine these bases separately.

    1.    28 U.S.C. § 1367(c)(2) - State Law Substantially Predominates Over Federal Law

The Supreme Court has indicated that state law claims may "substantially predominate" federal claims "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought . . . ." <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966); <u>Allstate Interiors & Exteriors, Inc. v. Stonestreet Constr., LLC</u>, 730 F.3d 67, 73 (1st Cir. 2013); <u>see also</u> <u>Executive Software</u>, 24 F.3d at 1552.

Here, there is significant overlap between the proof and issues raised. The evidence that will be submitted by Johnson to establish a violation of the ADA will also establish a violation of the Unruh Act. <u>See</u> Cal. Civ. Code § 51(f); <u>Cohen v. City of Culver City</u>, 577 F. App'x 745, 746 (9th Cir. 2014); <u>Lentini v. California Ctr. for the Arts</u>, 370 F.3d 837, 846-47 (9th Cir. 2004); <u>Munson v. Del Taco, Inc.</u>, 46 Cal.4th 661, 664-66 (2009). However, there is some divergence between Johnson's ADA and Unruh Act claims. A plaintiff may recover under the Unruh Act by showing either intentional discrimination or a violation of the ADA, but an ADA plaintiff need not demonstrate intentional discrimination. <u>See</u> <u>Cohen</u>, 577 F. App'x at 746; <u>Lentini</u>, 370 F.3d at 846-47; <u>Munson</u>, 46 Cal.4th at 664-66. Per the complaint, Johnson does allege that MSM's conduct was "intentional." <u>See</u> <u>id.</u> at ¶ 47. By alleging "intentional" misconduct, Johnson is

4

adding an issue and additional evidence that has no application to the ADA; "intentional misconduct" is an issue that is uniquely part of the Unruh Act. See id. Additionally, as explained below, the issue of statutory damages is unique to the Unruh claim. However, because of the nature of statutory damages, little if any evidence would be submitted. Thus, Johnson's Unruh claim encompasses slightly broader liability and damages issues and proof than his ADA claim. See id.

With respect to remedies, Johnson may obtain injunctive relief under the Unruh Act, see Koire v. Metro Car Wash, 40 Cal.3d 24, 27 n.4 (1985), and recover actual damages and at least $4,000 in statutory damages per occasion. See Cal. Civ. Code §§ 52(a), 55.56(a); Munson, 46 Cal.4th at 677-78. Statutory damages may be assessed "on each particular occasion that the plaintiff was denied full and equal access, and not upon the number of violations of construction-related accessibility standards identified at the place of public accommodation . . . ." Cal. Civ. Code § 55.56(f); Munson, 46 Cal.4th at 678. Under Title III of the ADA, Johnson may obtain injunctive relief only, monetary relief is unavailable. Wander v. Kaus, 304 F.3d 856, 858 (9th Cir. 2002). Because of the monetary damages available, the Unruh Act's remedies are more expansive then the ADA's.[2]

A number of courts, including the undersigned, have held that the mere fact that damages are available under the Unruh Act does not in and of itself mean that Unruh claims will substantially predominate over ADA claims. E.g. Johnson v. Mariani, 2017 U.S. Dist. LEXIS 106203, *9-*10 (N.D. Cal. July 10, 2017); Moore v. Anaya, 2012 U.S. Dist. LEXIS 65925, *4-*5 (E.D. Cal. May 9, 2012); Kohler v. Rednap, Inc., 794 F.Supp.2d 1091, 1096 (C.D. Cal. 2011). Other courts have found that Unruh claims substantially predominate over ADA claims based largely on the damages sought. E.g. Schutza v. Cuddeback, 262 F.Supp.2d 1025, 1030 (S.D. Cal.

---

[2] The Court notes that under the Unruh Act, an award of attorney's fees is mandatory. See Cal. Civ. Code § 52(a). Under the ADA, courts have the "discretion" to award attorney's fees to the "prevailing party." 42 U.S.C. § 12205. However, the discretion provided in § 12205 is "limited" and a prevailing ADA plaintiff should "ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Jankey v. Poop Deck, 537 F.3d 1122, 1129-30 (9th Cir. 2008). That is, the general rule is that a prevailing party will receive attorney's fees under the ADA. See id. Thus, in most cases, the prevailing plaintiffs will receive attorney's fees under both the ADA and the Unruh Act, and the ADA's "discretionary language" will usually be immaterial. See id.; Cal. Civ. Code 52(a).

5

2017); Organization for the Advancement of Minorities v. Brick Oven Rest., 406 F.Supp.2d 1120, 1131 (S.D. Cal. 2005); Molski v. Hitching Post 1 Restaurant, Inc., 2005 U.S. Dist. LEXIS 39959, *22-*23 (C.D. Cal. May 25, 2005).

In a recent unpublished opinion, the Ninth Circuit affirmed a district court's decision to decline to exercise supplemental jurisdiction in an age discrimination case based on a state law's more expansive remedies. See Armstrong v. Nan, Inc., 679 F. App'x 582 (9th Cir. 2017). In *Armstrong*, the district court dismissed a state law age discrimination claim on the eve of trial in part because punitive damages and pain and suffering were not available under the ADEA, but were available under Hawaii law. See Ninth Circuit Docket in Case 15-15818 Doc. No. 7 at pp. 6-8 & Doc. No. 14 at pp. 5-6.[3] On appeal, the Ninth Circuit held that the district court acted within its discretion by declining supplemental jurisdiction. See Armstrong, 679 F. App'x at 582. The Ninth Circuit held: "The [district] court concluded that because of the divergence of elements and remedies available under federal versus Hawaii state law, state law remedies would predominate and there was a substantial risk of jury confusion in evaluating and applying the divergent law to the two age discrimination claims. Because this was not an abuse of discretion, we affirm. See 28 U.S.C. § 1367(c)(2), (4)." Id.

From the above cases, and in particular *Armstrong*, the Court concludes that a state law claim's more expansive remedies can be a basis for declining supplemental jurisdiction under § 1367(c)(2), even when the state law claim largely mirrors the federal claim. See id. However, utilization of § 1367(c)(2) is discretionary. See 28 U.S.C. § 1367(c); Allstate Interiors, 730 F.3d at 73-74; Acri, 114 F.3d at 1000. In exercising that discretion, the Court no longer finds it sufficient to simply state that the availability of damages under the Unruh Act alone does not justify a refusal to invoke § 1367(c)(2). Cf. Armstrong, 679 F. App'x at 582. On the other hand, the Court stands by its previously expressed concerns that merely recognizing the fact that damages are available could lead to Unruh claims being routinely dismissed. See Moore, 2012 U.S. Dist. LEXIS 65925 at *4. Therefore, the Court concludes that it is prudent to be guided by

---

[3] The Court takes judicial notice of the Ninth Circuit's docket in *Armstrong*. See Fed. R. Evid. 201; In re Icenhower, 755 F.3d 1130, 1142 (9th Cir. 2014).

6

the amount of monetary damages that are potentially at stake in assessing the applicability of § 1367(c)(2) in joint ADA and Unruh cases.

In this case, there is no difference between the injunctions sought by Johnson under the Unruh Act and the ADA, and the additional proof and evidence related to "intentional conduct" is slight. The key consideration is the damages at stake on Johnson's Unruh claim. Johnson is not attempting to obtain actual damages, he seeks only statutory damages. The Complaint indicates that Johnson stayed at MSM's hotel on four occasions (once in July 2016, once in October 2017, and twice in March 2018), and each time experienced a barrier. See Complaint at ¶ 14. Applying the Unruh Act's statutory damages provisions, MSM appears to face statutory damages that will total $16,000.00. See Cal. Civ. Code §§ 52(a), 55.56(f); Complaint at ¶ 14. In *Schutza*, *Brick Oven*, and *Molski*, for example, the courts in those cases determined that $36,000.00, $56,000.00, and $52,000.00, were at issue and that these amounts reflected a substantial predomination.[4] See Schutza, 262 F.Supp.2d at 1030 (finding $36,000 at issue); Brick Oven, 406 F.Supp.2d at 1031 (finding $56,000 at issue); Molski, 2005 U.S. Dist. LEXIS 39959 at *22 (finding $52,000 at issue). $16,000 is not insignificant, but it is significantly less than amounts at issue in *Schutza*, *Brick Oven*, and *Molski*. Considering the slight additional proof and evidence, as well as the $16,000 that appears to be at stake in this case, the Court concludes that the state law claims predominate over the federal claims in terms of evidence, proof, and damages, but that the predomination is not sufficiently *substantial* as to warrant a declination of supplemental jurisdiction under § 1367(c)(2). See Kohler, 794 F.Supp.2d at 1096.

2.  28 U.S.C. § 1367(c)(4)

Because § 1367(c)(4) applies to "exceptional circumstances," courts "must identify the predicate that triggers the applicability of the category (the exceptional circumstances), and then determine whether, in its judgment, the underlying [values of judicial economy, convenience, fairness, and comity] are best served by declining [supplemental] jurisdiction in the particular case

---

[4] The Court understands that these calculations are not necessarily accurate under the current law of California Civil Code § 55.56(f). However, the Court is not considering these cases for their accuracy in calculating damages, the Court is considering these cases for the conclusions drawn from the perceived damages. That is, it is immaterial whether a plaintiff could actually recover the amounts identified, what is material is how the district court ruled in light of those believed damages.

7

(the compelling reasons)." Executive Software, 24 F.3d at 1558; see also Acri, 114 F.3d at 1001. Declining supplemental jurisdiction through § 1367(c)(4) should be the exception, not the rule. Executive Software, 24 F.3d at 1558.

Johnson does not dispute that in the past twelve months, he has filed 363 ADA and Unruh construction-related disability cases, 355 of which were filed in federal court. See Collins Dec. ¶¶ 3, 4, 5 & Exs. A, B. Because Johnson has filed more than ten disability construction defect cases in the past twelve months, he fits the definition of a "high frequency litigant" under California law.[5] As a "high frequency litigant," Johnson is subject to the procedural requirements of California Code of Civil Procedure § 425.50. Section 425.50 imposes the following pleading requirements: (1) complaint must allege whether it is filed by or on behalf of a high-frequency litigator; (2) the number of complaints alleging a construction related accessibility claim that were filed by the high frequency litigator in the past twelve months; (3) the reason the high frequency litigator was in the region of the defendant's business; and (4) the specific reason that the high frequency litigator desired access to the defendant's business. Cal. Code Civ. P. 425.50(a)(4). Additionally, a high frequency litigator must verify his complaint and pay an additional filing fee. See Cal. Code Civ. P. § 425.50(b); Cal. Gov. Code § 70616.5. Federal courts have found that these pleading requirements do not apply in federal court, and have applied the Federal Rule of Civil Procedure instead. E.g. Johnson, 2017 U.S. Dist. LEXIS 106203 at *5-*6; Saavedra v. Chu, 2017 U.S. Dist. LEXIS 87691, *3 (C.D. Cal. June 7, 2017); Anglin v. Bakersfield Prosthetic & Orthotics Ctr., 2013 U.S. Dist. LEXIS 181450, *12-*13 (E.D. Cal. Dec. 30, 2013); Oliver v. In-N-Out Burgers, 286 F.R.D. 475, 477 (S.D. Cal. 2012).

Two cases from the Southern District of California have accepted MSM's arguments and declined supplemental jurisdiction under § 1367(c)(4). See Schutza, 262 F.Supp.3d at 1030-31; Brick Oven, 406 F.Supp.2d at 1131-32. These courts emphasize that the plaintiffs are high

---

[5] In relevant part, a "high frequency litigant" is defined as a person who "utilizes court resources in actions arising from alleged construction-related access violations at such a high level that it is appropriate that additional safeguards apply so as to ensure that the claims are warranted. A "high-frequency litigant" means one or more of the following: (1) A plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation." Cal. Code Civ. P. 425.55(b)(1).

frequency litigants, that there is nothing to be gained by litigating in federal court other than to avoid state pleading requirements, the plaintiffs are engaged in forum shopping, and that considerations of comity and discouraging forum shopping constitute "exceptional circumstances" under § 1367(c)(4). See id. As explained by *Schutza*:

> The Court notes that Plaintiff Schutza has filed over one hundred cases in this and other courts alleging disability discrimination. As a high-frequency litigant primarily seeking relief under state law, the Court finds it would be improper to allow Plaintiff to use federal court as an end-around to California's pleading requirements. Therefore, as a matter of comity, and in deference to California's substantial interest in discouraging unverified disability discrimination claims, the Court declines supplemental jurisdiction over Plaintiff's Unruh Act claim. See Cross v. Pac. Coast Plaza Invs., L.P., No. 06 CV 2543 JM RBB, 2007 U.S. Dist. LEXIS 16138, 2007 WL 951772, at *5 (S.D. Cal. Mar. 6, 2007) (declining to exercise supplemental jurisdiction over plaintiff's Unruh Act claims in the interest of comity and noting this interest has become more compelling "as the courts struggle to resolve what is at the moment an irreconcilable tension between the ADA and the Unruh Act"); Hitching Post I Rest., 2005 U.S. Dist. LEXIS 39959, 2005 WL 3952248 at *8-9 (finding comity to be a compelling reason for declining supplemental jurisdiction over state claims on the ground that California courts should have the ability to interpret state disability laws).
>
> Finally, and relatedly, the Court agrees with Defendants' contention that Plaintiff is engaging in forum-shopping by bringing his action in federal court and attempting to avoid California's heightened pleading requirements for disability discrimination claims. It is unclear what advantage—other than avoiding state-imposed pleading requirements—Plaintiff gains by being in federal court since his sole remedy under the ADA is injunctive relief, which is also available under the Unruh Act. Federal courts may properly take measures to discourage forum-shopping, see, e.g., Hanna v. Plumer, 380 U.S. 460, 467-68 (1965), and here, where Plaintiff has filed over one hundred disability discrimination cases, and settled more than fifty of them in a two-year period, the Court finds this to be a compelling reason to decline supplemental jurisdiction. See, e.g., Brick Oven Rest., 406 F. Supp. 2d at 1132 ("Because a legitimate function of the federal courts is to discourage forum shopping and California courts should interpret California law . . . compelling reasons exist to decline supplemental jurisdiction over plaintiff's state law claims.").

Schutza, 262 F.Supp.3d at 1031.

Other cases have rejected the reasoning of *Schutza* and *Brick Oven* and any reliance on California Code of Civil Procedure § 425.50. See Johnson v. Mariani, 2017 U.S. Dist. LEXIS 106203, *11 (N.D. Cal. July 10, 2017); Schoors v. Seaport Village Operating Co., Ltd. Liab. Co., 2017 U.S. Dist. LEXIS 69262, *11-*12 (S.D. Cal. May 5, 2017). These cases emphasize that considerations of fairness and efficiency outweigh any concerns over comity, and that there is nothing improper about a litigant choosing to litigate in federal court. See id. As explained in

*Schoors*:

> First, there is no reason why Plaintiff should have to file his claims in state court, despite Defendant's contentions that Plaintiff is seeking to utilize the more lenient federal pleading standards. See Chavez v. Suzuki, No. 05cv1569 BTM (BLM), 2005 U.S. Dist. LEXIS 40092, 2005 WL 3477848, at *2 (S.D. Cal. Nov. 30, 2005) (holding that "there is nothing wrong with [p]laintiff choosing to file suit in federal court because he believes it is more favorable to him."). Second, forum shopping does not constitute a "compelling reason" for declining jurisdiction. See id. (noting that forum shopping is "commonplace among plaintiffs and removing defendants alike and is not an 'exceptional' circumstance giving rise to compelling reasons for declining jurisdiction."); see also Kohler, 794 F. Supp. 2d at 1096 (finding that forum shopping is customary in disability right violation suits).
>
> Moreover, the Court disagrees with Defendant's argument that forum shopping increases judicial and party litigation expenses. Instead, the Court finds the opposite and concludes that declining supplemental jurisdiction in the present matter would be an unnecessary expenditure of the Plaintiff, Defendants, and the state and federal courts' resources. Accordingly, the Court finds no compelling reasons to decline to exercise supplemental jurisdiction.

Schoors, 2017 U.S. Dist. LEXIS 69262 at *11-*12.

Additionally, in a case that pre-dates California Code if Civil Procedure § 425.50, this Court relied on a Northern District of California case and declined to invoke § 1367(c)(4) due to alleged forum shopping. See Moore, 2012 U.S. Dist. LEXIS 65925 at *5-*6. In that case, the litigant had filed more than 40 similar cases involving the ADA and the Unruh Act in the Eastern District of California. See id. at *5. The Court noted that for the ADA to be effective, it may be necessary for litigants to bring serial litigation in federal court. See id. (quoting Kohler, 794 F.Supp.2d at 1096 (quoting Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1062 (9th Cir. 2007)).

After consideration, the Court finds the reasoning of *Schoors* and *Johnson* to be persuasive. The concept of supplemental jurisdiction is well established. Litigants in federal court routinely bring both federal and state law causes of action, and the federal courts routinely resolve all such claims. There is nothing improper about Johnson, or any other litigant, following this well established and commonly used practice. The Court acknowledges that California has established a heightened pleading standard for high frequency litigants. As such, considerations of comity favor permitting California courts to follow, interpret, and enforce California pleading standards. However, as explained in *Schoors* and *Johnson*, it is not efficient, convenient, or fair to

require Johnson to file two nearly identical cases involve materially identical proof and issues. Johnson, 2017 U.S. Dist. LEXIS 106203 at *11; Schoors, 2017 U.S. Dist. LEXIS 69262 at *11-*12. It is judicially more economical for a single court to resolve the dispute between Johnson and MSM, instead of requiring duplicative efforts in multiple courts, possibly involving multiple juries, and possibly leading to inconsistent results. Finally, even if Johnson is forum shopping, the Court continues to find that such forum shopping is not sufficient to justify declining supplemental jurisdiction. See id.; Moore, 2012 U.S. Dist. LEXIS 65925 at *5-*6; Kohler, 794 F.Supp.2d at 1096. Therefore, the Court does not find that this case represents an "exceptional circumstance" under § 1367(c)(4).

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion to dismiss (Doc. No. 9) is DENIED; and
2. This case if referred back to the Magistrate Judge for the purpose of entering a scheduling order.

IT IS SO ORDERED.

Dated:   September 14, 2018          _____
                                     SENIOR DISTRICT JUDGE